IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP CONLEY, | No. C 05-02249 MJJ |
| Plaintiff, | **ORDER DENYING MOTION TO REMAND** |
| v. | |
| KEMPER INSURANCE COMPANIES, et al., | |
| Defendants | |

## INTRODUCTION

Before the Court is Plaintiff Philip Conley's motion to remand the above-entitled action to state court. Kemper Insurance Companies ("Kemper") and Broadspire Services, Inc. ("Broadspire") (collectively, "Defendants") oppose the motion. This motion requires the Court to determine whether Plaintiff's state law claims are completely preempted by the Employee Retirement Income Security Act ("ERISA"). Having considered the briefing in this matter and listened to argument from the parties, the Court **DENIES** Plaintiff's motion to remand.

## FACTUAL BACKGROUND

Prior to February 2003, Plaintiff was employed by Lumberman's Mutual Casualty Company, an entity operating under the umbrella of Kemper, as a Managing Claims Executive for a unit that managed "unbundled" claims for large risk commercial accounts of the insurance companies owned and operated by Kemper. In January 2003, Kemper stopped issuing new policies and went into "run off," meaning that it was adjusting claims from existing policies but taking on no new business.

In order to provide certain key employees incentive to stay with the company during this time period, Kemper offered to modify the existing Kemper Insurance Companies Welfare Benefit Plan ("Severance Plan") to provide these employees with "enhanced severance" benefits. This offer was contained in a letter from David Mathis, Kemper's CEO, dated February 6, 2003 (the "Letter Agreement"). The Letter Agreement was sent to Plaintiff and approximately 237 other employees.

1  Plaintiff accepted the "enhanced severance" benefits offer shortly thereafter.

2  In July 2003, Kemper sold the division in which Plaintiff worked to Broadspire. Plaintiff was then offered, and accepted, a job with Broadspire. On January 30, 2004, Broadspire terminated Plaintiff's employment. On April 27, 2005, Plaintiff filed the current action. Plaintiff alleges that he is entitled to severance benefits under the February 2003 Letter Agreement.

On June 2, 2005, Kemper removed this action to federal court on the basis of ERISA complete preemption. Broadspire joined in the removal petition. The removal petition contended that federal question jurisdiction exists because the Severance Plan is an employee welfare benefit plan governed by ERISA. On June 29, 2005, Plaintiff filed a motion to remand this action to state court.

**LEGAL STANDARD**

As a general rule, an action filed in state court may be removed to federal court only if it might have been brought there originally. *See* 28 U.S.C. § 1441(b). Courts construe the removal statute strictly, and must reject federal jurisdiction if there exists any doubt as to the propriety of removal. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

However, a state law claim is completely preempted by federal law, and may be properly removed to federal court, if such claim (1) relates to an ERISA plan within the meaning of 29 U.S.C. § 1144(a); and (2) falls within the scope of ERISA's civil enforcement found in 29 U.S.C § 1132(a). *See Toumajian v. Frailey*, 135 F.3d 648, 654 (1998).

**ANALYSIS**

Plaintiff argues that remand of this action is appropriate because the Letter Agreement was an independent contract that did not constitute an ERISA plan.[1] Defendants assert that the

---

[1] To the extent Plaintiff argues that the removal petition was faulty because Defendants failed to present any competent evidence demonstrating federal subject matter jurisdiction, the Court is unpersuaded. It is proper for a district court to consider evidence and other materials concerning its jurisdiction presented for the first time in the context of a motion to remand. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

2

1  Severance Plan is subject to ERISA[2] and the Letter Agreement was merely a modification of the
2  Severance Plan.  Defendants note that the Letter Agreement expressly incorporated all unmodified
3  terms of the underlying Severance Plan, and thus conclude that the current action must be
4  completely preempted by ERISA.

5        The Court's determination in this matter hinges on the preemptive sweep of ERISA which, as
6  the Ninth Circuit has recognized, is a "'comprehensive statute designed to promote the interests of
7  employees and their beneficiaries in employee benefit plans.'"  *Campbell v. Aerospace Corp.*, 123
8  F.3d 1308, 1311 (9th Cir. 1997) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)).
9  ERISA's general preemption provision, Section 514(a), states that ERISA "shall supersede any and
10 all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by
11 ERISA.  29 U.S.C. § 1144(a).

12       The words "relate to" have been interpreted by the federal courts to give ERISA preemption
13 expansive reach: "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it
14 has a connection with or reference to such a plan."  *Shaw*, 463 U.S. at 97; *Metropolitan Life Ins. Co.*
15 *v. Massachusetts*, 471 U.S. 724, 739 (1985).  "A state law may relate to a plan 'even if the law is not
16 specifically designed to affect such plans, or the effect is only indirect.'"  *Campbell*, 123 F.3d, at
17 1311 (quoting *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 139 (1990)).  However, preemption
18 under ERISA is not without limits.  *Campbell*, 123 F.3d at 1311.  Federal courts have recognized
19 that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a
20 manner to warrant a finding that the law 'relates to' the plan."  *Id.* (quoting *Shaw*, 463 U.S. at 100
21 n.21).

22       Here, the Court must decide whether Defendants' promise to pay the enhanced severance
23 benefits was premised on or amended the Severance Plan, such that any state common law or
24 statutory cause of action to enforce Defendants' promise would "relate to" an ERISA plan.   In the
25 leading case in this area of the law, the U.S. Supreme Court held that a severance plan is subject to
26 ERISA only if it requires an ongoing administrative scheme.  *Fort Halifax Packing Co., Inc. v.*
27 *Coyne*, 482 U.S. 1, 12 (1987).

28

---

[2]It appears that the parties agree that the Severance Plan was subject to ERISA.

3

Several Ninth Circuit cases have interpreted *Fort Halifax*. In *Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir. 1992), the court considered whether a program providing severance benefits for certain of defendant's key executives in the event defendant was sold was covered by ERISA. Severance would be paid if "neither [defendant's parent company] nor the buyer [of defendant] offers you 'substantially equivalent' employment and your employment is terminated." *Id*. at 1105. In turn, "'substantially equivalent employment' was defined as a job that included 'responsibilities similar'" to those the executive already had. *Id*. The determination as to what was "substantially equivalent employment" was to be made by defendant's parent company. Given these considerations, the *Bogue* court found the severance plan was covered by ERISA because the determination whether an employee had been offered "substantially equivalent employment" required an administrative scheme to effect discretionary application of plan terms. *Id*.

In *Delaye v. Agripac, Inc*., 39 F.3d 235, 237 (9th Cir. 1994), the plaintiff's employment contract provided that if he was terminated "without cause," his employer would pay him a fixed monthly amount for twelve to twenty four months according to a set formula, as well as provide him with some continuing benefits during that same period. After the plaintiff was fired and his former employer refused to pay any severance benefits, the plaintiff sued under ERISA. In overturning the district court's conclusion that this one-person employment contract constituted an ERISA plan, the Ninth Circuit distinguished this case from its earlier decision in *Bogue*. The Court stated:

> Delaye's contract does not implicate an ongoing administrative scheme. Once Agripac decided to terminate Delaye, the severance calculation became one akin to that in *Fort Halifax* – a straightforward computation of a one-time obligation. The obligation was either to pay Delaye his regular salary prorated to the date of his termination, if he was terminated for cause; or pay him a fixed monthly amount for twelve to twenty-four months according to a set formula, plus accrued vacation pay and insurance benefits, if he was terminated without cause. While payment could continue for as long as two years, there is nothing discretionary about the timing, amount or form of the payment. Sending Delaye, a single employee, a check every month plus continuing to pay his insurance premiums for the time specified in the employment contract does not rise to the level of an ongoing administrative scheme.

*Id*. at 237.

In *Velarde v. PACE Membership Warehouse, Inc*., 105 F.3d 1313 (9th Cir. 1997), the court extended its holding in *Delaye*. In *Verlarde*, 25 plaintiffs were offered severance benefits in a "Stay

4

On Letter." These benefits were conditioned upon meeting two eligibility requirements: 1) that the employee performs his duties in a satisfactory manner; and 2) that the employee not be terminated "for cause." Nonetheless, the court held that the Stay On Letter did not create a ERISA plan, reasoning that:

> [h]ere, as in *Delaye*, the employer was simply required to make a single arithmetical calculation to determine the amount of the severance benefits. While in both cases, a "for cause" termination would change the benefits due to the employee, the *Delaye* court did not deem this minimal quantum of discretion sufficient to turn a severance agreement into an ERISA plan. Contrary to PACE's assertions, the key to our holding *Bogue* was that there was "enough ongoing, particularized, administrative discretionary analysis," 976 F.2d at 1323 (emphasis added), to make the plan an "ongoing administrative scheme," not that the agreement simply required some modicum of discretion. The level of discretion, if any, which PACE was required to exercise in implementing the agreement was slight. It failed to rise to the level of ongoing particularized discretion required to transform a simple severance agreement into an ERISA employee benefits plan.

*Id*. at 1317.

Moreover, in *Eide v. Grey Fox Technical Services Corp.*, 329 F.3d 600 (8th Cir. 2003), the Eighth Circuit considered whether ERISA preemption existed where the plaintiffs alleged that their employer, Ceridan, made an oral promise to them regarding their severance benefits in the event that their unit was sold to another company. The substance of the promise was that, should the buyer terminate the employee within one year of the unit's sale, Ceridan would pay them lump sum severance equal to what they would have received under Ceridan's existing ERISA-covered severance plan. *Id.* at 605. The court noted that:

> Ceridian allegedly promised Employees that they would receive severance benefits if Grey Fox terminated them within their first year of employment. Pursuant to this promise, benefits would be awarded automatically and mechanically if the specific conditions of termination were satisfied. Payment of benefits would not create an on-going demand on Ceridian's assets. According to the record, the amount of the severance pay to be distributed to Employees upon their termination was set as of the last date of Employees' employment with Ceridian. During the course of this litigation, Ceridian has not disputed the specific amounts of severance pay claimed by Employees. Because Ceridian's benefits determinations for the Employees were set as of Employees' final date of employment at Ceridian, the determinations were not "made on an individual, ongoing basis, after exercising discretion . . . . Although the benefits to be paid to Employees were calculated according to the formulas provided by the Ceridian plan, they were not to be delivered pursuant to that plan. Instead, Employees were to receive a lump-sum payment of benefits in the event that Grey Fox terminated them within their first year of employment.

*Id*. at 605-606 (internal quotation marks and citations omitted). Thus, the court found that "no administrative scheme" was required for Ceridan to meet its obligations to the employee and held that Ceridan's promise did not constitute an ERISA plan. *Id*. at 606; *see also Crews v. Gen. Am. Life Ins. Co.*, 274 F.3d 502, 505 (8th Cir. 2001) (holding that contractual obligation to pay severance was independent of ERISA plan, and thus a breach of contract claim was not preempted, in light of higher amount to be paid and absence of any discretion).

In *Gresham v. Lumberman's Mutual Casualty Co.*, 404 F.3d 253 (4th Cir. 2005), the court considered whether Kemper's offer of separate severance benefits to an employee was covered by ERISA. In holding that the separate severance benefit agreement with the plaintiff operated independently from the Kemper Severance Plan, the court noted that:

> First, the substantial differences between the severance provision of Gresham's employment agreement and the terms of the Severance Plan--most notably the significantly greater amount of the benefit promised to Gresham and the absence of any conditions other than termination without cause--make clear that Kemper's promise to pay Gresham severance operated independently of the Severance Plan . . . . Second, there is no indication in the record that severance pay awarded to Gresham pursuant to his employment agreement would be paid out of funds allocated to the Severance Plan. In light of these facts, it is evident that Gresham's breach of contract claim does not relate to the Severance Plan.

*Id*. at 259.

Here, as an initial matter, the Court finds that the level of discretion which Defendants were required to exercise in implementing the Letter Agreement was minimal. If Plaintiff was found to be entitled to severance payments under the Letter Agreement, Defendant's obligation required a single payment for a predetermined amount. *See Delaye*, 39 F.3d at 237 (finding that the contract did not implicate an ongoing administrative scheme because "there is nothing discretionary about the timing, amount or form of the payment"); *see also Fort Halifax*, 482 U.S. at 12 (finding that the "requirement of a one-time, lumpsum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation"). The only conditions for payment provided in the Letter Agreement concerned the date of termination and whether the termination was without

6

1 cause, which was carefully defined in text of the Letter Agreement.³ Thus, this type of agreement is
2 in stark contrast to "ongoing administrative scheme" found preempted in *Bogue*.⁴

3 However, this finding does not end the Court's inquiry. The Court must also consider
4 whether the Letter Agreement was a sufficiently independent incentive agreement as to take it
5 outside of the Severance Plan and ERISA's broad reach. The Court finds that it was not. The Letter
6 Agreement specifically states that it was not a new employment agreement and, importantly,
7 expressly incorporated the underlying Severance Plan.⁵ "As modified by this letter with respect to
8 the amount you are entitled to receive, *the terms of the Severance Plan shall remain in effect*." (Ex.
9 B to Affidavit of Eric Epperson) (emphasis added).

10 Moreover, as noted by Defendants, the Letter Agreement explicitly contemplates situations
11 in which Kemper would be required to apply the terms of the Severance Plan to determine whether
12 the employee is entitled to the enhanced amount. *See Stearns v. NCR Corp.*, 297 F.3d 706, 711 (8th
13 Cir. 2002) (finding that an enhanced benefit program merely amended an existing ERISA plan
14 where the benefits provided by the program were insufficiently explained in the documents
15 distributed to beneficiaries and the documents advised beneficiaries to "refer to [the ERISA plan]
16 booklet . . . for the details of the [program]" and, documents by which the employer adopted the
17 program "confirm[ed] that it was an amendment to the existing employee benefit plans"). For
18 example, the Letter Agreement states that if an employee is terminated on or after February 1, 2004,
19 he receives "a lump sum payment equal to the higher of (i) six (6) times your regular monthly base

---

³While Defendants assert that eligibility for severance benefits under the Letter Agreement hinged on whether the employee was terminated "for cause," and thus substantial discretion in determining benefits was required, the Court cannot agree. This line of argument has been specifically rejected by the Ninth Circuit. *See Velarde*, 105 F.3d at 1317.

⁴Furthermore, the Court finds it irrelevant that the "enhanced benefits" offer was extended to 237 other Kemper employees. While it is indeed true that the contract in *Delaye* only applied to a single employee, other courts have followed Delaye's reasoning even when many employees received similar contracts. *See Velarde*, 105 F.3d at 1314 (25 employees); *Eide*, 329 F.3d 600 (27 employees).

⁵Thus, the present action in distinguishable from *Gresham*. In *Gresham*, the court noted that "nothing in the remainder of the employment agreement indicates that the severance plan even exists," and also stated that it was unclear whether the employment agreement incorporated the Severance Plan by reference. 404 F.3d at 261. Furthermore, neither *Delaye* nor *Velarde* involved enhanced severance benefit offers that explicitly incorporated the terms of the underlying severance plan. In contrast to those cases, the Letter Agreement at issue here clearly confirms the existence of the underlying Severance Plan and explicitly incorporates it by reference.

7

salary then in effect . . . and (ii) the amount of severance for which you are otherwise eligible under the terms of the Company's severance plan[.]"

Thus, in sum, it is clear that despite Plaintiff's assertion to the contrary, the Letter Agreement is not an separate and independent contract.  Rather, it appears that the Letter Agreement served only to modify the amount of severance benefits to which Plaintiff was entitled.  Therefore, the Court finds that the Letter Agreement was a part of the broader Severance Plan and implicated an ongoing administrative scheme.  Accordingly, the Court retains jurisdiction over this matter based on complete ERISA preemption.

## CONCLUSION

Based on the foregoing reasons, the Court **DENIES** Plaintiff's motion to remand.

**IT IS SO ORDERED.**

Dated: September__12__, 2005

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE